USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  March 16, 2021

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**MICHAEL ROSENBERG**

                              **Plaintiff,**

                    **-against-**

**TRIBOROUGH BRIDGE AND TUNNEL**
**AUTHORITY D/B/A MTA BRIDGES AND**
**TUNNELS,**

                              **Defendant.**

---

**19-CV-10478 (ALC)**

<u>**MEMORANDUM AND ORDER**</u>

**ANDREW L. CARTER, JR., District Judge:**

   Plaintiff, Michael Rosenberg, brings this action pursuant to New York General Business Law §§ 399-zzz and 349, alleging that Triborough Bridge and Tunnel Authority ("TBTA") charges an illegal $6 fee to send paper billing statements. Pending before the Court is Defendant's motion to dismiss the complaint. (ECF No. 22.) For the reasons that follow, the Court grants Defendant's motion to dismiss.

## BACKGROUND

   Plaintiff has an E-ZPass account with TBTA. Compl. ¶ 10. Since 2016, TBTA has charged Plaintiff a $6 fee to receive a paper billing statement. *Id.* Plaintiff alleges this fee violates New York General Business Law § 399-zzz. *Id.* at ¶¶ 13–17. Additionally, Plaintiff seeks to bring a New York General Business Law § 349 claim on behalf of a class of all New York residents or former residents who were charged the $6 fee to receive a paper billing statement by TBTA. *Id.* at ¶ 18.[1]

---

[1] Subject Matter Jurisdiction is met here as Plaintiff alleges that the amount in controversy exceeds five million and at least one member of the class is a citizen of a state different than Defendant. *See* Compl. at 6.

## PROCEDURAL HISTORY

Plaintiff commenced this action on November 12, 2019 against TBTA and the Port Authority of New York and New Jersey. (ECF No. 1.) Plaintiff voluntarily dismissed this action against the Port Authority of New York and New Jersey on December 23, 2019. (ECF No. 18.) On July 14, 2020, Defendant TBTA moved to dismiss this action. (ECF No. 22.) Plaintiff opposed the motion on July 29, 2020, and Defendant replied on August 12, 2020. (ECF Nos. 24, 26.)

### I.    LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008).  However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681.  Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon

2

which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court also may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

### i.   GBL § 399-zzz

Plaintiff's claim is based on GBL § 399-zzz(1), which provides that "no person, partnership, corporation, association or other business entity shall charge a consumer an additional rate or fee or a differential in the rate or fee associated with payment on an account when the consumer chooses to pay by United States mail or receive a paper billing statement." It further provides that "[t]his subdivision shall not be construed to prohibit a [business] from offering consumers a credit or other incentive to elect a specific payment or billing option." N.Y. Gen. Bus. Law § 399-zzz(1).

Section 399-zzz(2) provides that "[e]very violation of this section shall be deemed a deceptive act and practice subject to enforcement under article twenty-two-A of this chapter." *Id.* § 399-zzz(2). Article 22-A, in turn, includes GBL § 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." Id. § 349(a). The viability of Plaintiff's claim depends on the meaning of § 399-zzz(1).

Defendant argues that TBTA is not subject to Section 399-zzz as TBTA is a public benefit corporation, organized to construct or operate a public improvement, not a business corporation. *See* Def.'s Mem. of Law 4–5. Additionally, TBTA argues that Plaintiff receives an account statement, not a billing statement as contemplated by the statute, and therefore Plaintiff fails to state a claim under Section 399-zzz.

This is a question of statutory interpretation. When interpreting a statute, a court should first turn to the plain meaning of the statute. The Supreme Court of the United States has held that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete. *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations omitted); *see also Estate of Pew v. Cardarelli*, 527 F.3d 25, 30 (2d Cir. 2008) ("We first look to the statute's plain meaning; if the language is unambiguous, we will not look farther."); *Green v. City of N.Y.*, 465 F.3d 65, 78 (2d Cir. 2006) ("Statutory analysis begins with the text and its plain meaning, if it has one. Only if an attempt to discern the plain meaning fails because the statute is ambiguous, do we resort to canons of construction. If both the plain language and the canons of construction fail to resolve the ambiguity, we turn to the legislative history." (citations omitted)); *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir. 1999) ("It is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms. Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous." (citations omitted)).

To ascertain a statute's "plain meaning," a court must "look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, (1988). Alongside the statutory context, a court may also consult dictionaries to determine the "ordinary, common-sense meaning of the words." *United States v. Rowland,* 826 F.3d 100, 108 (2d Cir. 2016) (quoting *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000)); *see*, *e.g. Sullivan v. Hudson*, 490 U.S. 877, 894 (1989) (citing Black's Law Dictionary for the plain meaning of the phrase "civil action"); *United States v. Davis*, 648 F.3d 84, 89 (2d Cir. 2011) (citing Black's Law Dictionary for the plain meaning of the phrase "contrary to

law"); *United States v. Cohen,* 260 F.3d 68, 73 (2d Cir. 2001) (citing Black's Law Dictionary and Webster's 3d New International Dictionary for the plain meaning of the term "legal").

First, TBTA's attempt to draw a distinction between public benefit corporations and business corporations is unavailing. The Court need look no further than the text of the statute to decide this issue. *See Barikyan v. Barr*, 917 F.3d 142, 144 (2d Cir. 2019) ("Statutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there.") (internal quotation marks omitted). Here, the text of § 399 does not offer a definition of "corporation" specific to that section. Moreover, nothing in the language of § 399, or the context in which the term "corporation" is used in that section, militates against the application of the word corporation to TBTA, a public benefit corporation. As a result, TBTA is a "corporation" within the meaning of § 399-zzz. Because the text of the statute is precise and directly addresses the threshold issue, the Court need not resort to the legislative history to resolve the Parties' dispute over the word "corporation". *See Connecticut Nat'l Bank*, 503 U.S. at 253-54; *C.W. v. City of New York*, 322 F. Supp. 3d 344 (E.D.N.Y. 2018). However, the outcome would remain the same if the Court were to consider the statute's legislative history as a means of discerning legislative intent as to the word corporation. Nowhere in the statute's legislative history is there a distinction drawn between types of corporations, and the Court declines to read one into the statute. *See generally* New York Bill Jacket, 2010 S.B. 7296, Ch. 556.

Next, the Court turns to TBTA's argument that Plaintiff receives an account statement, not a billing statement as contemplated by the statute, and therefore Plaintiff fails to state a claim under Section 399-zzz. The plain language of the statute does not supply a definition for "billing statement" or any clear intent as to whether "billing statement" encompasses "account statement." Therefore, the Court finds the statute and the term "billing statement" to be ambiguous and

possibly susceptible to another interpretation, so the Court shall resort to the canons of statutory construction. A "fundamental canon of statutory construction" is that words generally should be "interpreted as taking their ordinary, contemporary, common meaning . . . ." *Wisconsin Cent. Ltd. v. United State*s, 138 S. Ct. 2067, 2074, 201 L. Ed. 2d 490 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). An account statement is defined as follows:

> **1.** A report issued periodically (usu. monthly) by a bank to a customer, providing certain information on the customer's account, including the checks drawn and cleared, deposits made, charges debited, and the account balance. — Also termed *bank statement*. See ACCOUNT (4). **2.** A report issued periodically (usu. monthly) by a creditor to a customer, providing certain information on the customer's account, including the amounts billed, credits given, and the balance due. — Also termed *account statement*.

STATEMENT OF ACCOUNT, Black's Law Dictionary (11th ed. 2019)

Contrary to Defendant's assertion, Black's Law Dictionary fails to define "billing statement" or "bill" in any relevant context as it is used in the statute. Rather there are several definitions, none of which apply here. *See* BILL, Black's Law Dictionary (11th ed. 2019). As neither of these definitions are particularly helpful to the Court in deciding this issue, the Court will next turn to the legislative history of the statute. *See Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 116 (2d Cir. 2007).

The legislative history of Section 399-zzz provides insight into the bill. The bill was introduced by Senators Jose Peralta and Diane Savino to "prohibit businesses from charging their customers an additional amount for choosing to receive paper billing statements or pay by U.S. mail" because "[p]aper billing and payment fees unfairly impact consumers that do not have internet access . . . as well as those that are uncomfortable using the Internet[.]" New York Bill Jacket, 2010 S.B. 7296, Ch. 556 at 1, 7. Additionally, the bill was said to "in effect, simply add a prohibition on charging for paper bills and would extend both prohibitions to cover a person or

business that sends out bills but is not within the definition of creditor." *Id.* Additional justification

was proffered by assemblywoman Audrey I. Pheffer in a letter to Governor Paterson. The letter

reads:

> Thank you for contacting my office with your request for information pertaining to A.9541-A, which prohibits an additional fee or rate to be charged in certain circumstances.
> At your request, I have enclosed the sponsor's memo for the legislation.
> In recent months, there have been instances of major companies proposing to impose an additional fee on the accounts of customers that choose to receive a paper bill by mail. Such paper billing and payment fees unfairly impact consumers that do not have Internet access in their homes, as well as, those that are uncomfortable using the Internet, including many senior citizens and those concerned about personal privacy.
> This legislation would expand upon the provisions of Section 702 of the General Business Law, which prohibit creditors from charging customers an additional rate or fee when the consumer chooses to pay by United States mail.
> I thank you for your attention in this matter and respectfully request your favorable consideration of this important legislation.

New York Bill Jacket, 2010 S.B. 7296, Ch. 556 at 6.

The New York Consumer Protection Board's letter to the governor provides further insight

into the legislative history of Section 399-zzz. The Board acknowledged that "[e]lectronic billing

clearly provides a great cost savings for companies, and a real benefit for the environment with

reduced paper usage," adding that "if a company or service provider wants to move its customers

to electronic billing it should do so with incentive based tactics, . . . and not a broad sweeping fee

imposed upon consumers as a penalty."  New York Bill Jacket, 2010 S.B. 7296, Ch. 556 at 14.

After reviewing the legislative history of Section 399-zzz, the Court finds that the account

statements that Plaintiff receives are not billing statements, or even bills, as contemplated by the

statute or the legislative history of the statute. The legislative history is clear that statute is intended

to reach businesses that charge fees to send paper bills and billing statements. While Plaintiff urges

that the Court must take Plaintiff's factual allegations that the statements are indeed billing

statements as true, "it is well established that on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court may also rely upon documents attached to the complaint as exhibits[ ] and documents incorporated by reference in the complaint." *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (internal quotation marks omitted)). As Plaintiff attached the image of the account statement to his complaint, the Court finds Defendant's Exhibit 1, E-ZPass Customer Agreement Terms and Conditions, incorporated by reference, which both Parties address in their papers. The exhibit is clear that these are account statements, not billing statements as Plaintiff suggests. Def.'s Exhibit 1 provides:

> Account Statements - At no cost to you, you can receive your *E-ZPass* account statement monthly via email. Just make sure your account is updated with a valid email address and that you have selected email as your method of choice. If not, you will receive your statement via the mail on a bi-monthly schedule at no cost to you. Should you require monthly paper statements please be advised that you will be charged a $6.00 annual fee.

Furthermore, nothing in the Agreement Terms and Conditions references billing statements. Rather, the account statements function to let E-ZPass participants review the activity on their account, as well as any charges that have been put onto the prepaid account from using E-ZPass. Once the prepaid account balance reaches a point below replenishment, the customer will be required to replenish the account to continue using E-Zpass. *See* Def.'s Exhibit 1. The Court finds that these account statements are not billing statements or bills as contemplated by Section 399-zzz. No payment is required upon receiving these account statements, and the legislative history is clear that the statute is addressing businesses that send out bills, paper billing statements, and pay by mail options. Thus, the Court grants Defendant's motion to dismiss Plaintiff's Section 399-zzz claim. Additionally, as Plaintiff's Section 349 claim is predicated on a violation of Section 399-zzz, the Court must dismiss this claim as well.

## CONCLUSION

For the aforementioned reasons, the Court grants Defendant's motion to dismiss Plaintiff's complaint. This resolves ECF No. 22.

**SO ORDERED.**

**Dated:**  March 16, 2021
      **New York, New York**
                                                               **ANDREW L. CARTER, JR.**
                                                              **United States District Judge**